**Robert Allan CORNELL, Appellant,**

v.

**STATE of IOWA, Appellee.**

**No. 93–1659.**

Court of Appeals of Iowa.

Dec. 14, 1994.

Unes J. Booth, Osceola, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher Jr., Asst. Atty. Gen., Gary G. Kimes, County Atty., and John D. Lloyd, Asst. County Atty., for appellee.

Heard by DONIELSON, C.J., and CADY and HUITINK, JJ. HAYDEN, J., takes no part.

CADY, Judge.

This is another appeal in the long-standing efforts by Robert Cornell to overturn his conviction for the 1976 first-degree murder of Kenneth Crow. He seeks review from the summary dismissal by the district court of a petition for postconviction relief. The district court found Cornell failed to file the petition within the statutory three-year period of limitation, despite having knowledge of the factual basis for the claims raised in the petition prior to the expiration of the limitation period. The findings of the district court were judicially noticed from an earlier federal court decision which dismissed a petition by Cornell for habeas relief. Cornell claims he was entitled to an evidentiary hearing to show he fell within an exception to the limitation period. We disagree, and affirm.

We first review the background of this case. The primary witness against Cornell at his original trial was his thirteen-year-old stepbrother Glen Albert Oliver (Albert). Albert testified that he, Cornell, and Crow drove from Des Moines to Texas in Cornell's car in August 1976. According to Albert, a few days later, during their return to Des Moines, they stopped at a wooded area along Interstate 35 in Southern Iowa. Cornell and Crow then walked together into the woods. Albert testified Cornell had a .38 caliber pistol with him. A short time later, Albert heard a shot, and Cornell returned alone. Cornell implied, in response to a question by Albert, that he shot Crow. A few days later, Albert reported the incident to law enforcement authorities. The next day, with Al-

bert's help, Crow's body was located. He had been shot once in the back of the head.

Another witness at trial was Eric Lynn Cross. Cross testified Cornell told him shortly after the Texas trip he broke Crow's neck after Crow tried to shoot him.

Cornell was convicted by a jury of first-degree murder. The conviction and sentence of life imprisonment without parole were affirmed on direct appeal. See State v. Cornell, 266 N.W.2d 15 (Iowa 1978), cert. denied, Cornell v. Iowa, 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Cornell was unsuccessful in his initial habeas corpus challenge in federal court. See Cornell v. State, 628 F.2d 1044 (8th Cir.1980), cert. denied, 449 U.S. 1126, 101 S.Ct. 944, 67 L.Ed.2d 112 (1981). His first application for postconviction relief in state court was eventually denied. See Cornell v. State, 430 N.W.2d 384 (Iowa 1988). The hearings on the application were held in October 1985 and into 1986.

Cornell filed a second habeas corpus application in 1988, which was eventually amended to include as a ground for relief that Cross had recanted his trial testimony. The application was denied on appeal following successful relief from the district court. See Cornell v. Nix, 976 F.2d 376, 384 (8th Cir. 1992). In Cornell v. Nix, the circuit court of appeals concluded Cornell procedurally defaulted on the recantation claim by not first presenting it during the 1985–86 state postconviction proceeding.

Cornell then filed his present application for postconviction relief on May 6, 1993. Two claims were raised. Cornell first asserted he was entitled to a new trial based on the Cross recantation. Secondly, he argued he was denied effective assistance of counsel in the 1985–86 state postconviction proceeding, and this prevented him from raising the Cross recantation.

In response to the application, the State filed a motion to dismiss. The motion argued Cornell was barred from instituting the postconviction application under the three-year limitation period set forth in Iowa Code section 822.3 (1993). As applied to Cornell's conviction, the limitation period ran July 1, 1987. See Brewer v. Iowa Dist. Court, 395

N.W.2d 841, 844 (Iowa 1986). The State further pointed out that the factual basis for the issues raised by Cornell in his application had been addressed by the federal court in the second habeas corpus proceeding, establishing as a matter of law that Cornell knew of the Cross recantation claim within the three-year period prior to the running of the limitation period. Consequently, the State argued that the exception to the limitation period could not be satisfied. A copy of the federal court decision was attached to the motion to dismiss. The trial court summarily dismissed the application.

Cornell claims the district court erred in dismissing his application without an opportunity to present evidence to show his claims fell within the exception to the three-year limitation period under section 822.3. He argues the findings in the federal habeas corpus proceeding do not have preclusive effect.

## I. Statute of Limitations

Persons who desire to seek postconviction relief in Iowa are required to file their application within three years from the date of conviction or issuance of procedendo in the event of an appeal. Iowa Code § 822.3 (1993). If the conviction became final prior to the July 1, 1984 effective date of the statute, the limitation period is extended to June 30, 1987. *Brewer*, 395 N.W.2d at 844. The statutory time bar, however, is not absolute. It "does not apply to a ground of fact or law that could not have been raised within the applicable time period." Iowa Code § 822.3. We must decide in this case if the findings by the circuit court of appeals in the second habeas corpus proceeding preclude Cornell from showing that the claims asserted in the present postconviction proceeding "could not have been raised" prior to July 1, 1987. In doing so, we first briefly review the habeas corpus proceeding documented in *Cornell v. Nix*, 976 F.2d 376 (8th Cir.1992).

## II. Findings of Federal Habeas Proceeding

Cornell filed his second habeas corpus petition on November 9, 1988. The petition claimed exculpatory evidence had been suppressed by the state. On February 6, 1989, the petition was amended to allege the suppression of additional exculpatory evidence, including the Cross recantation. In response, the Government argued Cornell was procedurally barred from raising any claim based on the Cross recantation because he failed to raise the claim in connection with the earlier 1985–86 state postconviction proceeding.

▮ It is an accepted principle of law that a claim not raised in the state courts will not be considered by a federal habeas court unless the petitioner can demonstrate cause for the failure to raise the claim and prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, 608 (1977). The court in *Cornell v. Nix*, used this standard to resolve the issue whether Cornell was barred from asserting the Cross recantation claim. *Cornell v. Nix*, 976 F.2d at 380. In applying the standard, the circuit court found the factual basis for the Cross recantation was "reasonably available" to Cornell at the time of the 1985–86 state court hearing. It specifically found Cornell's counsel knew Cross previously recanted in 1977, and that there was nothing in the record to suggest that counsel could not have obtained Cross's recantation for the state postconviction hearing.[1] *Id.* at 381. The court concluded Cornell failed to demonstrate cause for failing to raise the claim in state court.

## III. Procedure in State Court

▮ A statute of limitations is an affirmative defense generally raised by a responsive pleading. *Davis v. State*, 443 N.W.2d 707, 708 (Iowa 1989). It may, however, also be raised by motion to dismiss when the narrow scope of the proceedings confirms the

---

1. Cornell's counsel offered two signed but unsworn statements by Cross at the state postconviction hearing in 1985. *Cornell v. Nix*, 976 F.2d at 379. Cross recanted his trial testimony in the statements. *Id.* Cross was not called as a witness at the hearing because he was incarcerated in Missouri. *Id.* The circuit court acknowledged Cross was outside the subpoena power of the Iowa Court. *Id.* at 381 n. 3. No efforts were made to secure the testimony of Cross by deposition or other means. *Id.* at 381.

claim for relief was barred when the action was commenced. *See id.* We also recognize that the doctrines of res judicata and collateral estoppel may be raised by a motion to dismiss if the prior adjudication appears on the face of the petition or arises from judicially noticed matters. *See Johnson v. Ward,* 265 N.W.2d 746, 749 (Iowa 1978). Moreover, judicially noticed facts and other matters may be considered in addressing a motion to dismiss. *See Berger v. General United Group, Inc.,* 268 N.W.2d 630, 634 (Iowa 1978).

■ A party claiming an exception to a normal limitations period must plead and prove the exception. *Franzen v. Deere & Co.,* 334 N.W.2d 730, 732 (Iowa 1983). A general pleading is all that is required, and it must be accepted as true when challenged by a motion to dismiss. *Id.* Cornell did not plead the exception to the statute of limitations in his petition, but set forth his objections to giving preclusive effect to the circuit court decision in his resistance to the motion to dismiss. *See Davis,* 443 N.W.2d at 708 (court considered resistance to motion to dismiss to determine existence of grounds that could fall within the exception of section 822.3).

Cornell makes no claim that the trial court acted improperly when it took judicial notice of the federal court decision, or otherwise considered outside evidence. To the contrary, he claims the prior federal court decision was not dispositive of the issue whether his claim is within the exception to the three year limitation period under the Iowa statute.

### IV. Effect of Prior Federal Court Adjudication

■ "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first cause." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980). This rule of law is known as collateral estoppel or issue preclusion. It is comprised of four elements.

The issue upon which preclusion is asserted must have been identical, it must have been raised and litigated, it must have been material and relevant to the disposition, and it must have been necessary and essential to the court's judgment. *Stanley v. Fitzgerald,* 509 N.W.2d 454, 457 (Iowa 1993).

■ The pivitol issue before the court in *Cornell v. Nix* was whether Cornell demonstrated cause for his failure to raise the Cross recantation claim in 1985. Cause can be demonstrated under federal law by showing "reasonable unavailability" of the factual basis for the claim. *Cornell v. Nix,* 976 F.2d at 380. In resolving the issue, the court found "that the factual basis for Cornell's claim based on Cross's recantation was reasonably available to petitioner at the time of his state postconviction hearing." *Id.* This issue of fact was litigated, material and relevant to the ruling, and necessary to the court's decision. Cornell claims, however, it lacks identity.

■ Identity of issues requires the same facts and legal standards be used to resolve the issues. Cornell argues the federal standard of "reasonable unavailability" differs from the Iowa standard requiring the claim "could not have been raised." He also points out the Cross recantation which gave rise to the federal proceeding existed only in the form of unsworn statements. Cornell did not obtain a formal affidavit from Cross until 1989. Thus, Cornell asserts his state postconviction claim could not have been pursued until a sworn affidavit was produced.[2]

■ We examine the language of section 822.3 in light of its purpose and objectives. *See State v. Edman,* 444 N.W.2d 103, 105–06 (Iowa App.1989). It is clear the legislative intent of section 822.3 was to conserve judicial resources, promote substantive goals of criminal law, foster rehabilitation, and restore a sense of repose in our criminal judicial system. *Id.* We also recognize that statutes of limitations are built on practical and pragmatic foundations. *See Davis,* 443

---

2. This argument is based on the requirement that a motion for new trial based on newly discovered evidence be supported by affidavits or testimony of witnesses. Iowa R.Crim.P. 23(2)(b)(8). Cornell cited no authority making the rule applicable to petitions for postconviction relief.

N.W.2d at 710 (quoting *Chase Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, 1635 (1945)).

Our appellate courts have previously observed that the objective of the escape clause of section 822.3 is to provide relief from the limitation period when an applicant had "no opportunity" to assert the claim before the limitation period expired. *Wilkens v. State*, 522 N.W.2d 822, 823–24 (Iowa 1994) (citing *Edman*, 444 N.W.2d at 106). We have never inquired into the strength or form of the evidence to support a claim in considering whether the claim could be raised, nor have we constructed any artificial barriers requiring evidence to be supported by affidavits. To the contrary, the focus of our inquiry has been whether the applicant was or should have been "alerted" to the potential claim before the limitation period expired. *Wilkens*, 522 N.W.2d at 824; *See also Hogan v. State*, 454 N.W.2d 360, 361 (Iowa 1990).

 The purpose and design of the modern federal scheme to prohibit repeated postconviction relief actions essentially mirrors the Iowa scheme. Under the federal abuse-of-the-writ doctrine, claims raised for the first time in subsequent federal habeas petition are rejected when they "could have been raised" or "could have been developed" in the first federal habeas petition. *Delo v. Stokes*, 495 U.S. 320, 321–22, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325, 329 (1990); *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364, 375 n. 6 (1986). Moreover, when a claim could have been discovered upon reasonable investigation, failure to timely pursue it is not excused merely because the evidence ultimately discovered might have strengthened the claim. *McCleskey v. Zant*, 499 U.S. 467, 498, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517, 547 (1991). Clearly, the focus of the inquiry is not on the form of the evidence, but the opportunity to present the claim. We believe the "reasonably unavailable" standard is synonymous with this "could not have been raised" standard. There are no special prerequisites to the filing of a postconviction relief petition which would hinder a claim that could have been raised from actually being raised.

In this case, the dispositive issue of fact is whether Cornell could have raised the Cross recantation claim prior to July 1, 1987. This same issue of fact was decided in *Cornell v. Nix*. The circuit court specifically found the recantation claim was reasonably available at the time of the 1985–86 postconviction hearing. The finding necessarily resolves the question of whether Cornell could have raised the issue prior to July 1, 1987. Thus, the prior resolution of this fact issue precludes Cornell from showing that the statute of limitation was extended to preserve his claim.

Similarly, Cornell's claim of ineffective assistance of postconviction counsel must fail. The claim is premised on the failure to properly raise the Cross recantation. Like the claim involving the Cross recantation, however, it is time barred. *See Hogan*, 454 N.W.2d at 361. It has been judicially established that Cornell was alerted to the Cross recantation claim in 1985–86. Thus he cannot now assert ignorance of the claim of ineffective postconviction counsel. *Wilkins*, 522 N.W.2d at 824. Having been alerted to the underlying recantation claim prior to July 1, 1987, Cornell should have also been alerted to the claim of ineffective assistance of counsel within the time limitation. *Id.* His pleadings and resistance otherwise offered no reason for his failure to meet the extended *Brewer* deadline of June 30, 1987 due to ineffective counsel.

**AFFIRMED.**